UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

HAGOP KITISHIAN                          CIVIL ACTION NO. 26-0971

                                          SECTION P

VS.

                                          JUDGE JAMES D. CAIN, JR.

MARKWAYNE MULLIN, ET AL.                  MAG. JUDGE KAYLA D. MCCLUSKY

REPORT AND RECOMMENDATION

Petitioner Hagop Kitishian, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[1]  Respondents oppose the petition. [doc. # 7].  For reasons below, the Court should grant Petitioner's request for release from custody.

**Background**

Petitioner is a citizen of Israel.  "Petitioner, with his parents and siblings, immigrated to the United States from Israel when petitioner was about 12 years old.  They were all granted Lawful Permanent Resident status upon their entry to the United States in or about 1991." [doc. # 1, p. 1].

"On October 24, 2012, Petitioner was convicted in the Louisiana 5th Judicial District Court, Case No. 2012-F-111, of the offense of Distribution of a Schedule IV CDS and was sentenced to 6 years at hard labor with credit for time served.  Upon completion of his sentence

_____

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

release from state custody, he was taken into ICE custody and was placed in removal proceedings before the LaSalle Immigration Court in Jena, Louisiana." [doc. # 1, p. 2].

"On March 22, 2019, Petitioner was ordered removed from the United States to Israel pursuant to a Final Order of Removal issued by the LaSalle Immigration Court. Upon information and belief, Petitioner waived appeal and the order of removal became administratively final on March 22, 2019." [doc. #s 1, p. 2; 7-1, p. 1]. "[A]n ICE official informed him that ICE was unable to obtain a travel document for his removal to Israel because Israel did not recognize him and had refused to issue a travel document. Accordingly, in or about May 2019, Petitioner was released by ICE under an Order of Supervision." [doc. # 1, p. 2].

"On June 6, 2025, ICE arrested Petitioner in Natchitoches, Louisiana." [doc. # 1, p. 3].

On December 15, 2025, Petitioner "asked an ICE official during their normal rounds what was happening with his removal to Israel[,]" and the "official told him, as he had been told during his initial post-order custody review in 2019, that 'Israel does not recognize you.'" *Id.* at 3-4. "On December 18, 2025, an ICE officer brought him another application for a travel document for Israel, which he signed as requested. On December 20, 2025 he was taken by an ICE official for a phone call with an official from the Israeli Embassy, who told him that the Embassy would have to investigate his case because they had no record of him being present in the United States. The official told him that the Embassy would follow up with him again soon. But he has received no call, nor has he heard of any progress with the Israeli Embassy since then." *Id.* at 4. In March 2026, "in response to Petitioner's written request regarding the progress on his removal, an ICE official simply responded that they are still working on his case." *Id.* at 4.

Petitioner filed this proceeding on March 27, 2026.  Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), he claims that despite his full cooperation, "ICE has been unable to remove him to Israel for over 9 months, and there is no significant likelihood that [he] will be removed to Israel in the reasonably foreseeable future."  *Id.* at 4.  He argues, "His removal is not reasonably foreseeable because removal to Israel is not possible.  The Israeli government previously indicated it will not issue a Travel Document to him. . . . ICE has not provided any evidence that Israel has changed its decision, as it indicated to ICE officials both in 2019 and in 2025, that it will not issue a Travel Document for Petitioner because it does not recognize him as an Israeli citizen."  *Id.* at 16.

Petitioner also claims that ICE failed to comply with regulations: "ICE failed to provide the written notice revoking Petitioner's prior Order of Supervision and failed to provide the subsequent interview to contest the revocation as required under 8 C.F.R. §241.13(i)(3).  ICE also failed to interview Petitioner regarding his continued detention in connection with the 180-day post-order custody review as required by 8 C.F.R. §241.4(i)(3)(i).  ICE also failed to serve on Petitioner either the 90-day or 180-day post-order custody review decisions regarding his continued detention as required under 8 C.F.R. §241.4(h)(4) and 8 C.F.R. §241.13(g)."  [doc. # 1, p. 5].

Respondents opposed the petition on April 20, 2026.  [doc. # 7].  They argue primarily (i) that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future and (ii) that the Court lacks jurisdiction over Petitioner's "challenges to ICE's execution of the removal order[.]"  *Id.* at 1.

Petitioner filed a reply on April 22, 2026.  [doc. # 8].

3

## Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." *See Zadvydas*, 533 U.S. at 687. The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia*

4

*v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, under *Zadvydas*, this Court enjoys jurisdiction over Petitioner's constitutional claim.

**Law and Analysis**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v.*

*Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[2]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."  *Id.* at 700.

 "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, he has been detained approximately one year following his final order of removal.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  For about one year, the Government has been unable to obtain a travel document for him despite his full cooperation.  Moreover, he states that Israel twice refused to issue a travel document for him, and Jordan once refused to issue a travel document.  [doc. # 8, p. 9].  In addition, on December 15, 2025, an ICE official told him, "Israel does not recognize you."  Furthermore, on December 20, 2025, an official from the Israeli Embassy "told him that the Embassy would have to investigate his case because they had no record of him being present in the United States" and that the "Embassy would follow up with him again soon."  Petitioner, however, did not receive a return call, and he has not "heard of any progress with the Israeli Embassy since then."  In March

---

[2] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

2026, "in response to Petitioner's written request regarding the progress on his removal, an ICE official simply responded that they are still working on his case."

Respondents do not rebut Petitioner's showing. They do not present any evidence to rebut Petitioner's arguments above. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents recount: "On or about May 13, 2019, ERO submitted to the Israeli Consulate requesting a travel document status update. Request was denied. . . . On or about May 29, 2019, ERO submitted a request for a Jordanian travel document for petitioner. . . . On or about July 3, 2019, ERO was notified the request for travel document from Jordan was denied. . . . On or about July 9, 2025, another request for travel document was submitted to Israel. . . . On or about April 7, 2026, ERO was notified a travel document from Israel could not be produced." [doc. # 7-2, pp. 2-3]. Respondents conclude, "As of today, DHS is still going through the process of attempting to remove the petitioner." *Id.* at 3.

That (i) Israel twice denied the Government's requests for a travel document (once in May 2019, and again in April 2026) and (ii) Jordan denied the Government's request for a travel document does not establish that removal is *significantly likely* to occur in the reasonably foreseeable future. Respondents essentially present requests—which are indicative of some efforts at progress—followed by no indication of progress along with no indication that progress will occur. The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified an alternative country for Petitioner's removal, much less made any additional efforts at securing a travel document. From the record, it appears that they have not even started the process of attempting to remove Petitioner to an alternative country. And they do not state how long it will take after the process begins. Yet, they still detain him.

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[3] At best, they state that "DHS is still going through the process of attempting remove the petitioner." [doc. # 7-2, p. 3]. However, as Petitioner argues, they do not provide any detail about the nature of these alleged efforts. [doc. # 8, p. 4]. Respondents also suggest that they have no travel documents for Petitioner because "the processes for obtaining a temporary travel document from another country . . . include considerations of diplomacy that

---

[3] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

are beyond the control of ICE." [doc. # 7, p. 4]. From this, it appears Respondents suggest that obtaining travel documents is beyond their control. If it is out of their control, removal is not significantly likely to occur in the reasonably foreseeable future.

Moreover, Respondents do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been communicating with any country about Petitioner's deportation (apart from receiving the denials from Israel and Jordan), that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[4, 5]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably

---

[4] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[5] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[6]

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Hagop Kitishian's petition for habeas corpus be **GRANTED**: Respondents, including the Warden of Winn Correctional Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary; (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release; and upon his release, (C) return Petitioner's property to him, including any identity documents and his passport, and issue him a physical copy of the order of supervision.

---

[6] The undersigned finds no need to address any claim or request for relief not addressed herein.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[7]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of April, 2026.

Kayla Dye McClusky
United States Magistrate Judge

---

[7] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.